*Greene F. Johnson,* for plaintiff in error.

*Doyle Campbell, solicitor-general, Richard B. Russell,* contra.

---

10117. KENNEDY·*v.* THE STATE.

BROYLES, P. J. The evidence in this case, connecting the defendant with the possession or control of the whisky found outside his restaurant,

was wholly circumstantial, and was insufficient to exclude every reasonable hypothesis save that of his guilt. It follows that the court erred in overruling the motion for a new trial.

*Judgment reversed. Bloodworth and Stephens, JJ., concur.*

DECIDED JANUARY 9, 1919.

Indictment for misdemeanor; from Floyd superior court—Judge Wright. September 24, 1918.

The indictment charged the defendant with having control and possession of intoxicating liquors. From the evidence it appeared that in a three-story building divided into two sections by a hall running through the center, and occupied by a number of tenants, the defendant had a restaurant "on the lower floor of the left section." Police officers found behind the restaurant and on a table against the wall at the rear door a half-gallon fruit-jar containing whisky, and, just above this table and on a concrete embankment, a quart-bottle containing "a mixture of something like cider and whisky," wrapped in an old pair of trousers. A cement wall about five or six feet high and about three or four feet from the rear end of the building runs along at the back, and there is an opening in the center of the building by which all tenants can use the rear part where the whisky was found. An undertaker's establishment and a pressing club occupy the section opposite that occupied by the defendant, and doors from these places as well as from the center hall open on the space back of the building. The table on which the whisky was found was just outside a door of the defendant's restaurant, and on it were several coca-cola bottles. A cook employed in the restaurant testified: "The table just outside of the door of the restaurant . . . is his [the defendant's] table, and we use it in connection with the restaurant, to put coca-cola bottles, milk bottles, and other things on. . . No one else uses this table. The public used the rear part of the building, where the table was, as well as the cement part to the rear. All the occupants of these two upper stories use the back part of the building, as well as tenants in the undertaker's parlor, and negro pressing club, as do also the patrons of these tenants. The public use the back part of the building throughout the day and night. You can go through the building from the street; . . . it stays open all the time. There is a toilet in the rear . . which is used by tenants, patrons of tenants, and the public. The defendant uses half-gallon fruit-jars in the restaurant for the purpose of keeping

milk in them." The defendant was away from the restaurant from about four o'clock in the afternoon until nine o'clock at night, and on his return at nine the police officers searched the premises and discovered the liquor. None was discovered in the restaurant, and he denied that he knew anything of the liquor or the trousers found with it. The cook testified that he was in the restaurant and had the back door locked all the time during the absence of the defendant that afternoon and night, and during that time went to the rear, where the table was, but did not notice any whisky there.

*W. B. Mebane,* for plaintiff in error.

*C. H. Porter, solicitor-general,* contra.